IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Criminal No. 09-171 |
| | ) | |
| TIONA L. JONES | ) | |

OPINION

DIAMOND, D.J.

On May 20, 2009, defendant Tiona L. Jones was charged in a three-count indictment with making a false statement in connection with the acquisition of a firearm on or about May 19, 2008 (Count One) and on or about May 20, 2008 (Count Two), both in violation of 18 U.S.C. §922(a)(6); and possession with intent to distribute 100 grams or more of heroin on or about May 27, 2008, in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(B)(i) (Count Three). In June 2010, defendant filed the following pretrial motions: (1) motion for severance of counts for trial (Document No. 28);[1] (2) motion to produce evidence under Fed.R.Evid. 404(b) and 609 (Document No. 29); (3) motion for discovery (Document No. 30);[2] and (4) motion to suppress evidence and statements ( the "original suppression motion") (Document No. 31).

---

[1] The court has ruled on defendant's motion for severance of counts for trial. Government counsel indicated at a status conference held on August 30, 2010, that the government did not oppose a severance of Counts One and Two of the Indictment from Count Three. By order dated August 31, 2010 (Document No. 44), the court granted defendant's motion and severed Counts One and Two from Count Three for trial. The order stated that the trial of Count Three will occur first.

[2] At the August 30, 2010, status conference, government counsel provided defense counsel with the police report defendant had requested in her motion for discovery. In addition, government counsel indicated that she did not have in her possession any other documents responsive to defendant's discovery requests. Accordingly, the court entered an order on August 31, 2010 (Document No. 43) denying as moot defendant's discovery motion.

By her original suppression motion, defendant has challenged the warrantless searches of her automobile, her purse and her residence, which were conducted by the Pittsburgh Police on May 27, 2008. As a result of those searches, the police seized heroin, which is the basis for the charge against defendant in Count Three of the Indictment. Defendant also contends her statements to law enforcement officers should be suppressed because those statements were the fruit of the prior unlawful searches and seizures, and they were taken in violation of her Fifth and Sixth Amendments rights. A hearing on defendant's original suppression motion was scheduled for August 30, 2010, but was continued numerous times due to counsels' various scheduling conflicts. The hearing eventually was scheduled to occur on December 13, 2010.

On the morning of the scheduled hearing, government counsel informed defense counsel and the court that she just had been advised by a Pittsburgh Police officer involved in the case that the drug evidence in question, along with defendant's change purse, had been destroyed. The evidence had been stored by the Pittsburgh Police in the Bureau's Property Room. As explained below, defense counsel had requested that this evidence be brought to the suppression hearing. The court directed government counsel to inquire why the evidence had been destroyed. The court then held hearing on December 13, 2010, concerning defendant's motion to suppress statements, but held in abeyance hearing on her motion to suppress the physical evidence.

By letter dated December 20, 2010, government counsel informed the court that Allegheny County Deputy District Attorney Thomas Swan confirmed that the heroin and change purse had been destroyed. According to government counsel's letter, an Assistant District Attorney, who believed the state case against defendant had been nolle prossed but was unaware it had been adopted for federal prosecution, had approved destruction of the evidence. Nevertheless, the

2

government indicated it would proceed with the prosecution of defendant's case because the heroin, change purse and other evidence were observed by City of Pittsburgh police officers and the heroin was subjected to laboratory analysis prior to being destroyed.

On January 18, 2011, the court held hearing on defendant's motion to suppress the physical evidence. The government presented the testimony of Pittsburgh Police officers Michael Molitaris, Mark Goob and Jason Snyder. According to Detective Goob, during the course of a traffic stop, he requested that defendant produce her driver's license. Detective Goob testified that when defendant reached into her purse to retrieve her license, he observed bricks of heroin in an open change purse which was inside of her larger purse. See Document No. 60, Transcript of January 18, 2011, suppression hearing ("Tr.") at 61. Detective Goob testified that the heroin was in plain view because it was "taking up so much space of the small change purse that it actually couldn't shut. It was kind of forced open." Tr. at 61. Detective Goob further testified that one would have "had to pull the heroin out if [the change purse was] turned . . . upside down because it was kind of in there fairly snug." Tr. at 103. Detective Goob also testified that a cigar box containing marijuana was in the bottom of the change purse under the heroin, which made it an even tighter fit. Tr. at 103. After viewing the heroin in defendant's change purse, Detective Goob placed her under arrest. Tr. at 62.

Defendant testified on her own behalf, and also presented the testimony of her sister and her daughter. Defendant disputed Detective Goob's assertion that he observed the heroin in plain view inside of her change purse. Defendant admitted that she had heroin in her change purse, but claimed the change purse was at the bottom of her larger purse and it was closed. Tr. at 218. Defendant also testified the cigar box was not in the change purse, but rather was at the bottom of

3

her larger purse. Tr. at 218. According to defendant and her sister, a police officer searched her purse and discovered the heroin while she was occupied at the rear of the car with other officers. Tr. at 171-72, 220.

Following the January 18, 2011, suppression hearing, defendant filed a motion to dismiss Count Three of the Indictment and, in the alternative, to suppress evidence and statements based upon failure to produce evidence under Rule 16 and destruction of evidence (Document No. 61) (hereinafter, "defendant's Motion"), which was the subject of a hearing held on April 6, 2011. For the reasons stated herein, defendant's Motion will be denied.[3]

## I.  Factual Background Relative to Destruction of Evidence

The events leading to defendant's arrest by the Pittsburgh Police occurred on May 27, 2008. The federal indictment against defendant was filed on May 20, 2009. After defendant's arrest on the federal charges, she was arraigned on August 4, 2009. At the arraignment, defense counsel provided government counsel with a standard discovery letter, see defendant's Motion, Ex. 1, requesting, inter alia, permission pursuant to Fed. R.Crim.P. 16(a)(1)(E) to inspect and copy any documents, photographs or tangible objects that are material to the preparation of defendant's case or are intended for use by the government as evidence at trial. Also on August 4, 2009, government counsel provided defense counsel with a Receipt for Local Criminal Rule 16 Material (the "Receipt"). See government's Response to defendant's Motion (Document No. 63), Ex. 1. The Receipt stated, "at a time convenient to all parties," defendant's counsel will be permitted to

---

[3] The court will rule separately on defendant's original suppression motion, which was the subject of hearings held on December 13, 2010, relative to defendant's motion to suppress statements, and on January 18, 2011, concerning her motion to suppress physical evidence.

4

inspect and copy the Rule 16(a)(1)(E) materials. The Receipt further stated that defense counsel should contact government counsel to view the physical evidence.

Defense counsel apparently never asked to view the evidence until October 27, 2010, when she sent a letter to government counsel asking that the case agent bring the change purse and heroin found therein to the suppression hearing.[4] See defendant's Motion, Ex. 6. Government counsel directed Detective Robert Stroschein to retrieve the requested items of evidence and bring them to the hearing. At that time, the suppression hearing was set for November 15, 2010, but subsequently was continued until December 13, 2010. As stated above, it was on December 13th that government counsel learned the evidence had been destroyed.

At the hearing held on April 6, 2011, concerning defendant's Motion relative to destruction of the evidence, the parties introduced records pertaining to the state court case against defendant. In addition, the government presented the testimony of Pittsburgh Police Sergeant Lynn DeVault, who manages the Property Room at Pittsburgh Police headquarters, and Assistant District Attorney ("ADA") Angela Kelley, who works in the Asset Forfeiture Unit of the Allegheny County District Attorney's Office.

State court records reveal that various traffic violation and drug charges were filed against defendant at OTN No. G432768-0 in the Court of Common Pleas of Allegheny County on May 27, 2008. On September 9, 2009, ADA Deborah Jugan filed a petition for nolle prosse of the state charges, stating "the defendant has been indicted federally on these charges." See defendant's

---

[4] According to defendant, she requested that the change purse and the heroin it contained be brought to court for the suppression hearing in order to demonstrate, contrary to Detective Goob's testimony, that the change purse could be closed with the heroin inside of it; thus, there would have been no reason to have it open because the contents potentially could spill into the larger purse. See defendant's Motion, ¶31.

5

Motion, Ex. 2. By order dated September 9, 2009, Court of Common Pleas Judge Jill Rangos granted the petition for nolle prosse. Id.

According to Sergeant DeVault's testimony and documentary evidence introduced at the hearing on April 6, 2011, during the summer of 2010, Sergeant DeVault and other employees who worked in the Property Room experienced respiratory problems, headaches, dizziness, blurred vision, dry eyes and throat problems due to odors produced by the drugs stored there. Sergeant DeVault and several other employees sought medical treatment for these health issues. As a result of the odor problem, on June 1, 2010, Property Room employees were relocated to another space in the building to perform their administrative duties, but they still accessed the room where drug evidence was stored when necessary. The Allegheny County Health Department performed air quality testing, and it eventually was determined that problems with the air conditioning system increased the humidity level, which in turn impacted ventilation in the building. Steps were taken to remediate the problem, but the Property Room employees remained in the relocated space until late August 2010.

Because of the odor problem associated with drugs stored in the Property Room, Sergeant DeVault and another Property Room employee endeavored to clean up the room were drugs were stored. To accomplish this task, they identified drug evidence that potentially could be destroyed by first focusing on large bags of evidence and then compiling a list of cases based on the case status listed on the web docket report. Defendant's case was among the cases Sergeant DeVault and her co-worker identified for potential destruction of evidence. Sergeant DeVault testified she did not know anything about defendant's case and only focused on it because the evidence was stored in a large bag and the web docket indicated the case had been nolle prossed.

AO 72
(Rev. 8/82)

Sergeant DeVault advised ADA Kelley about the odor problem in the Property Room and explained that she and her co-worker were compiling a list of cases for ADA Kelley to review in order to determine if the evidence in question could be destroyed.

According to ADA Kelley's testimony, the fact that Sergeant DeVault asked her to check on the status of certain cases made this situation unique. In that regard, ADA Kelley testified that the police and other agencies are provided a list of items that are acceptable for destruction in controlled burns that are conducted several times a year. Normally, the District Attorney's Office receives a list of thousands of cases from the Pittsburgh Police, indicating that the evidence in those cases is appropriate for destruction. The District Attorney's Office does not further investigate the status of those cases. The evidence to be destroyed is transported to the site designated for the controlled burn, where the police or other submitting agency is given a receipt by a representative of the District Attorney's Office for the evidence that is to be destroyed.

In June 2010, however, the procedure described above was not followed because of the odor problem in the Property Room and the resulting effort to dispose of drug evidence in old cases. Rather, on June 2, 2010, Sergeant DeVault e-mailed ADA Kelley with a list of OTN numbers, including the OTN number associated with defendant's state court case. Sergeant DeVault's e-mail requested ADA Kelley to "have these OTN's checked on, I believe all of these drugs can be destroyed." See defendant's Motion, Ex. 3.

According to ADA Kelley, after having received Sergeant DeVault's e-mail request, she reviewed the public web docket reports for the cases in question. The public web docket report indicated that defendant's state case had been nolle prossed, but the web docket did not state the reason for that disposition. On June 4, 2010, ADA Kelley responded to Sergeant DeVault's e-mail

7

and advised with respect to each listed case whether or not the drug evidence could be destroyed. ADA Kelley stated with regard to the OTN number of defendant's state case, "G432768-0 - Tiona Jones- Nolle Prosse on 9/9/09 - destroy." See defendant's Motion, Ex. 3.

Both Sergeant DeVault and ADA Kelley testified that the heroin involved in defendant's case, and presumably the change purse, subsequently was destroyed in a controlled burn conducted at Eye and Ear Hospital on June 12, 2010, which was overseen by the District Attorney's Office. Sergeant DeVault testified the change purse likely was stored in a sealed brown evidence bag with the heroin, which was not opened by the Property Room, and that sealed bag was placed directly into the incinerator.

Sergeant DeVault testified she did not know defendant's case had been adopted for federal prosecution. Had Sergeant DeVault known that, she testified she would not have asked whether the drug evidence could be destroyed.

ADA Kelley also testified she was unaware that defendant's state case had been adopted for federal prosecution and, had she know that, she would not have advised Sergeant DeVault that the drug evidence could be destroyed. In addition, ADA Kelley explained she did not know the change purse was stored in the sealed evidence bag with the heroin when she approved destruction of the drug evidence in defendant's case. Finally, ADA Kelley testified that she only checked the public web docket for the status of defendant's case, and not the case file itself, because it would have been in storage at that time and not readily accessible.

AO 72
(Rev. 8/82)

## II. Defendant's Motion to Dismiss Count Three and, in the alternative, to Suppress Evidence and Statements Based Upon Failure to Produce Evidence Under Rule 16 and Destruction of Evidence

Defendant argues that the government has violated her due process right of access to the evidence, as well as Rule 16 of the Federal Rules of Criminal Procedure, and claims that dismissal of Count Three of the Indictment or suppression of the evidence and testimony regarding the destroyed evidence is the appropriate remedy. For reasons explained herein, the court finds defendant's arguments lack merit.

### A. Rule 16 of the Federal Rules of Criminal Procedure

Rule 16(a)(1) of the Federal Rules of Criminal Procedure specifies the information the government is required to disclose to a defendant. Among other matters, upon a defendant's request, the government must permit the defendant to inspect "tangible objects" that: (1) are material to preparing the defense; (2) the government intends to use in its case-in-chief at trial; or (3) were obtained from or belong to the defendant. Fed.R.Crim.P. 16(a)(1)(E).

Defendant argues that the heroin and change purse fall into all three of these categories and access to those items was requested in writing through her discovery letter at the time of arraignment but, despite her request, the government destroyed the evidence. As such, defendant requests that the court exclude any testimony regarding the evidence, as well as all fruit of the evidence, pursuant to Rule 16(d)(2)(C) and (D), which gives the court discretion to prohibit a party who fails to comply with Rule 16 from introducing evidence and entering any other order that is just under the circumstances.

The government has complied with Rule 16 in this case. Defendant made a standard form discovery request at the time of arraignment, which included a request to inspect "tangible objects"

9

that fall under Rule 16(a)(1)(E). See defendant's Motion, Ex. 1. The government in turn provided defendant's counsel with a Rule 16 Receipt stating "[a]t a time convenient to all parties, the attorney for the defendant will be permitted to inspect . . . all tangible objects . . ." that fall under Rule 16(a)(1)(E). See government's Response, Ex. 1. The Receipt directed defendant's counsel to contact government counsel to view the physical evidence. Id.

There is no indication that defense counsel contacted government counsel prior to October 2010 (or 14 months after defendant's arraignment) concerning the tangible objects of evidence in this case. As stated, in a letter dated October 27, 2010, defense counsel requested that the change purse and heroin found therein be brought to the suppression hearing. See defendant's motion, Ex. 6. Government counsel agreed to defense counsel's request to bring the evidence to the suppression hearing, not knowing at that time the evidence had been destroyed. Government counsel, therefore, never refused defendant's request to view tangible objects, nor did the government attempt to conceal from defendant any evidence discoverable under Rule 16(a)(1)(E).

To bolster her claim that the government violated Rule 16, defendant alleges the government exhibited a history of refusing to comply with discovery in this case. This allegation relates to defendant's attempt to obtain discovery of a police report, a consent to search form and her statements to law enforcement, which she claims she needed to file her suppression motion. According to defendant, the government failed and refused to provide these items in a timely fashion, which necessitated her filing multiple motions for extension of time to file pretrial motions

AO 72
(Rev. 8/82)

and delayed the filing of her suppression motion.[5] Defendant also claims that the government's delay in providing her with these reports and forms, which in turn supposedly delayed the filing of her original suppression motion, contributed to destruction of the tangible evidence. See defendant's Motion, ¶¶43-44. While defendant maintains that requesting extensions of time was caused by the government's "intransigence on discovery," see id., ¶23, the court notes that defense counsel routinely requests numerous extensions of time in cases pending before this court, which the court recognizes are necessitated by counsel's heavy case load. In any event, defendant's allegation that the government delayed in producing forms and reports, even if true, does not establish that the government separately failed to comply with Rule 16(a)(1)(E) concerning the inspection of tangible objects, specifically the heroin and change purse that was destroyed. Again, the government did not refuse defendant's request to view the tangible objects of evidence in this case, nor did the government conceal from defendant any evidence discoverable under Rule 16(a)(1)(E).

### B. Due Process Right of Access to Evidence

Defendant next claims that the government acted in bad faith by permitting the destruction of the change purse and the heroin it contained, which were seized from her on May 27, 2008, in violation of her due process right of access to evidence. While negligence by the District Attorney's Office may have led to the destruction of the evidence in this case, it is clear the

---

[5]Defendant claims she filed her original suppression motion on June 18, 2010, after having given up on the government fulfilling its discovery obligations voluntarily. See defendant's Motion, ¶28. When defendant filed her original suppression motion, she also filed a discovery motion requesting documents concerning the warrantless searches that occurred on May 27, 2008. Defendant says she was seeking a police report, her statements and a consent to search form. Id. The government provided defendant with the consent to search form on August 3, 2010. At the August 30, 2010, status conference, government counsel provided defense counsel with the police report she had requested. In addition, government counsel indicated that she did not have in her possession any other documents responsive to defendant's discovery requests.

11

evidence was not destroyed because of any bad faith by the government or the District Attorney's Office.

In California v. Trombetta, 467 U.S. 479 (1984), the Supreme Court held that for destruction of evidence to amount to a constitutional violation, the "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Id. at 489. In Arizona v. Youngblood, 488 U.S. 51 (1988), the Court further held that where destroyed evidence is deemed to be only potentially useful, as opposed to apparently exculpatory, the defendant must show that the evidence was destroyed in bad faith in order to establish a denial of due process. Id. at 58; see also United States v. Deaner, 1 F.3d 192, 200 (3d Cir. 1993) ("A defendant who claims destroyed evidence might have proved exculpatory if it could have been subjected to tests has to show the prosecution's bad faith in ordering or permitting its destruction."). Mere negligence by the government or police, without any showing of bad faith, does not establish a due process violation. See Youngblood, 488 U.S. at 58.

To be clear, Trombetta applies to a situation where the government destroyed evidence that possessed an apparent exculpatory value, whereas Youngblood applies when the government destroyed "potentially useful evidence." Compare Trombetta, 467 U.S. at 489, with Youngblood, 488 U.S. at 58. The Youngblood Court defined "potentially useful evidence" as evidence of which "no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." Youngblood, 488 U.S. at 57.

Here, the destroyed change purse and the heroin it contained falls under the "potentially useful evidence" defined in Youngblood, as opposed to evidence that had apparent exculpatory

12

value as discussed in Trombetta. As stated by defendant, the change purse and heroin "were needed by the defense to demonstrate and corroborate [her] testimony that the change purse was zipped when it was inside her purse, and therefore was not in plain view as alleged by Detective Goob." See defendant's Motion, ¶49. In addition, defendant says those items of evidence were needed "to impeach Detective Goob's testimony that the change purse could not be zipped." Id.; see also defendant's Reply to the government's Response ("defendant's Reply") (Document No. 64), ¶11 ("The Government's destruction of the change purse . . . foreclosed [defendant from] being able to use that evidence . . . to impeach Detective Goob's testimony about whether or not the change purse could have been zipped."). Presumably, defendant would have attempted to demonstrate to the trier of fact that the change purse could be zipped closed even with the heroin inside of it, contrary to Detective Goob's testimony that the heroin was "taking up so much space of the small change purse that it actually couldn't shut", Tr. at 61, to challenge his testimony that the heroin was in plain view.

Because the change purse and heroin can be considered "potentially useful evidence" to defendant, Youngblood next requires the court to consider whether the government acted in bad faith in connection with destruction of the evidence. The inquiry into bad faith "must necessarily turn on the [government's] knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." Youngblood, 488 U.S. at 56, n*. The United States Court of Appeals for the Tenth Circuit in the case of United States v. Bohl, 25 F.3d 904 (10th Cir. 1994), considered the following factors in evaluating bad faith under Youngblood: (1) whether the government was placed on notice that the defendant viewed the evidence as potentially exculpatory; (2) whether the defendant's assertion that the evidence was potentially exculpatory was conclusory or supported

13

AO 72
(Rev. 8/82)

by objective, independent evidence; (3) whether the government still had possession or the ability to control the disposition of the evidence when it received notice from the defendant of the evidence's potential exculpatory value; (4) whether the destroyed evidence was central to the government's case; (5) whether the government offers an innocent explanation for failing to preserve the evidence; and (6) whether the evidence was destroyed in accordance with standard procedure and whether it was adequately documented prior to its destruction.[6] Bohl, 25 F.3d at 911-13. Although this court is not bound to apply the factors laid out in Bohl, we find those factors instructive in analyzing defendant's assertion of bad faith by the government in this case.

Here, there is no indication the government was placed on notice that defendant viewed the change purse and the heroin it contained to be potentially exculpatory. Although defendant provided the government with a standard discovery request when she was arraigned on August 4, 2009, in which she asked permission to inspect any tangible objects, the government responded with a Rule 16 Receipt advising defendant that she would be permitted to inspect such items and should contact government counsel to view the physical evidence. Defendant did not make repeated requests to view the evidence which were refused by the government. In fact, defendant never requested to view the physical evidence prior to October 27, 2010, when her counsel sent a letter to government counsel asking that the change purse and heroin be brought to the suppression

---

[6] In Bohl, the Tenth Circuit found that the government's destruction of potentially useful evidence (steel tower legs used to build transmission towers) violated the defendants' due process rights and the remedy for that due process violation was dismissal of the indictment. The Bohl court found the government acted in bad faith for the following reasons: (1) the defendants repeatedly sent letters requesting access to the tower legs before they were destroyed; (2) the defendants put the government on notice that they believed the tower legs were potentially exculpatory; (3) the defendants backed up that assertion with independent evidence giving the government reason to believe that further testing on the tower legs might lead to exculpatory evidence; (4) the government still had possession of the tower legs when it received notice from the defendants about their potential exculpatory value; (5) the tower legs which were destroyed were central to the government's case; and (6) the government did not offer any innocent explanation why it failed to preserve the evidence. Bohl, 25 F.3d at 911-13.

14

hearing. Quite simply, defendant never informed the government that she viewed those items of evidence as potentially exculpatory. Therefore, factors one, two and three identified in Bohl weigh against a finding that the government acted in bad faith.

The fourth Bohl factor, whether the destroyed evidence is central to the government's case, does not weigh heavily one way or the other in the bad faith analysis. Certainly, if the change purse and heroin were available, the parties could use it to demonstrate whether or not it was possible to close the change purse with the heroin inside of it. But, even if the change purse and heroin were available, the trier of fact still would be required to evaluate the conflicting testimony of Detective Goob and defendant as to whether the change purse was in fact open or closed. In that regard, the availability of the change purse could only work against defendant's case because if it were demonstrated that it could not be closed that would be conclusive evidence that it was open as Detective Goob testified, but the fact that it could be closed would not be evidence that it was closed as defendant contends and the trier of fact still would have to evaluate the conflicting testimony of Detective Goob and defendant.

The fifth Bohl factor considers whether the government has offered an innocent explanation for failing to preserve the evidence. The government has done so here. A misunderstanding by the Allegheny County District Attorney's Office regarding the status of defendant's state court case led to destruction of the change purse and heroin. ADA Kelley's review of the public web docket report indicated to her that defendant's state case had been nolle prossed, but the reason for that disposition was not included on the web docket. ADA Kelley credibly testified that she was unaware defendant's state case had been nolle prossed because it had been adopted for federal prosecution. Without knowing that the case against defendant had been adopted for federal

15

prosecution, ADA Kelley advised Sergeant DeVault that the evidence could be destroyed. ADA Kelley credibly testified she would not have done so if she had known defendant's case had been adopted for federal prosecution.

In hindsight, ADA Kelley may have been negligent in only reviewing the public web docket report, and not performing additional research, but any such negligence does not establish the government acted in bad faith. Moreover, even if any negligence attributable to the District Attorney's Office could be imputed to the federal government, this does not establish that the government acted in bad faith. See Youngblood, 488 U.S. at 58 (observing that negligence by the government in failing to preserve evidence does not establish that it acted in bad faith). Here, the government has provided an explanation why the evidence was destroyed that negates a finding of bad faith.

Regarding the final Bohl factor, defendant contends that the evidence was not destroyed in accordance with any normal procedure, nor was it properly forfeited and destroyed pursuant to Pennsylvania state statutory law and federal regulatory law. The Third Circuit has held, "[w]hile a showing that the government did not follow standard procedure could provide some evidence of bad faith, we have not held that an improper procedure in and of itself implies bad faith." Deaner, 1 F.3d at 200. Thus, the fact that the evidence at issue here was not destroyed pursuant to normal procedure is not dispositive in determining whether the government acted in bad faith.

The final Bohl factor also considers whether the evidence was adequately documented prior to its destruction. Here, the heroin was subjected to laboratory analysis before it was destroyed. See Allegheny County Office of the Medical Examiner Evidence Submission Form, a copy of which is attached to the government's Response as part of Exhibit 2. In addition, the heroin and

AO 72
(Rev. 8/82)

change purse were photographed by the Pittsburgh Police, and the government submitted those photographs as evidence at the suppression hearing held on January 18, 2011. One photograph showed the open change purse with the bundles of heroin inside of it. In the same photograph, the cigar box which contained marijuana was placed next to the open change purse that was filled with heroin. Citing Detective Goob's testimony that the cigar box with marijuana was at the bottom of the change purse, Tr. at 103, defendant notes that the heroin inside of the change purse was removed and replaced prior to the photograph being taken. See defendant's Reply, ¶12. Accordingly, defendant argues the photographs are not useful because they do not depict the change purse in the condition in which it was seized from defendant. Id. However, the fact remains that the heroin was submitted for laboratory analysis and the evidence, including the change purse, was photographed by the police. Defendant therefore may make whatever argument she deems appropriate to the trier of fact concerning the condition of the evidence when it was seized from her.

In sum, bad faith in the context of destruction of evidence requires more than mere negligence; rather, it requires a deliberate effort to frustrate the defendant's defense. Negligence by the Allegheny County District Attorney's Office may have led to destruction of the change purse and the heroin in this case, but that evidence was not destroyed because of any bad faith by the government. Therefore, defendant's request to dismiss Count Three of the indictment will be denied, and her request for suppression of evidence and statements based on destruction of evidence likewise will be denied.

AO 72
(Rev. 8/82)

### III. Conclusion

For the foregoing reasons, defendant's motion to dismiss Count Three of the Indictment and, in the alternative, to suppress evidence and statements based upon failure to produce evidence under Rule 16 and destruction of evidence will be denied.

An appropriate order will follow.

                                                    Gustave Diamond
                                                    United States District Judge

Date: April 19, 2011

cc:    Margaret E. Picking
       Assistant U.S. Attorney

       Marketa Sims
       Assistant Federal Public Defender

AO 72
(Rev 8/82)